OPINION OF THE COURT
Richard T. Andrias, J.
On February 15, 1976, the defendant, Ronald Nasbit, *606 pleaded guilty to the crime of menacing, a class B misdemeanor under the Penal Law (Penal Law § 120.15). No judicial promise as to sentence was made; however, the defendant was released on his own recognizance for the preparation of a Probation Department presentence report. The defendant failed to appear as directed for sentencing on March 30, 1976 or thereafter on the adjourned date of April 22, 1976, when the "stayed” bench warrant was ultimately issued. On the eleventh anniversary of his sentencing date, March 30, 1987, the defendant was arrested in The Bronx on unrelated felony charges. Two days later he was involuntarily returned to New York County for sentencing on the still outstanding bench warrant.
The defendant moves pursuant to CPL 380.30 to bar the imposition of sentence and for a dismissal of the charges. He argues that the court, having failed to afford him his statutory right to be sentenced without "unreasonable delay” (CPL 380.30 [1]), has lost jurisdiction over him.
While cases involving lengthy sentencing delay do not arise with great frequency, because the specter of loss of jurisdiction goes to the very heart of the judicial process, they invariably provoke further litigation. In the instant case, neither the People, the defendant nor defense counsel raised the matter during the 11-year hiatus; nor was defendant in custody during this period. Thus, in the context of essentially undisputed facts, the policy considerations surrounding the issue of lengthy sentencing delay present themselves in their purest form.
CPL 380.30 (1) mandates that a sentence "must be pronounced without unreasonable delay”. The defendant also has an absolute right to make a statement personally on his own behalf before sentence is pronounced (CPL 380.50). Except where a person convicted of a misdemeanor signs and acknowledges a written waiver (CPL 380.40 [2]), the law requires that a defendant "must be personally present at the time sentence is pronounced” (CPL 380.40 [1]). However, the compatible goals of speedy sentencing procedures and the participation of the defendant come into direct conflict in the case of an absent defendant.
While the essential facts are not in dispute, a further brief review of the procedural history of the case is necessary before considering the contentions of the parties and analyzing the applicable case law. On February 13, 1976 at 66 East *607 130th Street, Manhattan, the defendant is alleged to have broken through the apartment door of one Lytheater Nunn and put a sharp object to her neck. The defendant, then a resident of 3055 Bouck Avenue, Bronx, was arrested on February 14, 1976, and on February 15, 1976 was arraigned in New York County Criminal Court on the felony charge of burglary in the second degree (Penal Law § 140.25) and misdemeanor charges of criminal possession of a weapon in the fourth degree (Penal Law § 265.01), criminal mischief in the fourth degree (Penal Law § 145.00) and menacing (Penal Law § 120.15). At that proceeding, with the consent of the People and on the advice of his Legal Aid Society attorney, the defendant pleaded guilty to the B misdemeanor charge of menacing to cover the then reduced docket. The sentencing was adjourned to March 30, 1976 and a Probation Department investigation report, including psychiatric profile, was ordered. Despite his lengthy criminal record and the apparent serious nature of the incident, the defendant was released on his own recognizance. He failed to appear in Calendar Part AP3 for sentencing on March 30, 1976 and a bench warrant was issued but "stayed” for one adjournment by the court. When the defendant again failed to appear on April 22, 1976, the stayed warrant was executed. The warrant was duly lodged, and on March 30, 1987, when the defendant was arrested in Bronx County on felony charges of burglary, assault and attempted sodomy, he was also held on the still outstanding New York County warrant. Two days later he was returned to this court. Court records reveal that at the time of his recent arrest defendant had been living in The Bronx at 2837 Briggs Avenue for three months and claimed a prior address of 3755 Barnes Avenue, Bronx.
A request for dismissal by a defendant who pleaded guilty but absconded prior to sentence appears to be a drastic remedy. The Coiirt of Appeals, however, recognizing strong public policy reasons for prompt and orderly administration of justice, has for some time countenanced depriving the trial court of jurisdiction to sentence a defendant where there has been "inordinately long and unexplained delay” in imposing sentence. (People ex rel. Harty v Fay, 10 NY2d 374.) More recently in People v Drake (61 NY2d 359), the court discussed at length the various factors that must be considered when weighing a motion to dismiss based on extended delay in sentence. "[T]he passage of time standing alone does not bar imposition of sentence or require a defendant’s discharge *608 * * * It is inexcusable delay that does so” (supra, at 365-366). "[I]f the delay is the result of judicial or prosecutorial negligence or mistake, a loss of jurisdiction results and the [information] must be dismissed” (supra, at 366). However, "[w]hen there has been an extended delay and there are plausible reasons for it, the various factors involved must be balanced” (supra, at 366-367).
The defendant reads Drake’s reaffirmation of the remedy of depriving the trial court of jurisdiction where there has been an unreasonable delay in imposing sentence as applying to an absconding defendant. Yet neither the facts of Drake (supra) nor the court’s language require such a reading. Drake involved an available defendant whom the trial court inexplicably neglected to sentence for over 39 months. The court relied upon the reasoning of past cases where the prosecutor had known of a defendant’s whereabouts but had declined to produce or extradite the defendant for sentencing. (See, People ex rel. Harty v Fay, 10 NY2d 374, supra [Bronx County District Attorney notified that defendant was in New York State’s Coxsackie Facility]; People v Newcombe, 18 AD2d 1087 [2d Dept 1963] [Suffolk County District Attorney aware of defendant’s incarceration in Federal penitentiary]; People v Monaghan, 34 AD2d 815 [2d Dept 1970] [Queens District Attorney notified that defendant was in Texas jail]; see also, People v Miller, 130 AD2d 449 [1st Dept 1987] [the recent First Department case involving failure to extradite for sentence a defendant whose location in Massachusetts was known].)
While Drake (supra) reiterates the New York rule that a defendant has no obligation to demand sentencing, where a defendant’s own efforts have frustrated the imposition of sentence, the court will not be deprived of jurisdiction: "It is unexcusable delay that does so. If the delay is caused by legal proceedings or other conduct of the defendant which frustrates the entry of judgment, it is excusable (see Matter of Weinstein v Haft, supra; Matter of Root v Kapelman, 67 AD2d 131, mot for lv to app den 47 NY2d 706 * * *)” (People v Drake, supra, at 366). In Weinstein (93 AD2d 786 [1st Dept 1983], affd 60 NY2d 625), the court had rejected the petitioner’s claim for dismissal because the period of delay was at her behest. In Kapelman (supra), a delay of several years did not result in loss of jurisdiction where the defendant had absconded for five years.
Defendant’s interpretation of Drake (supra), that it rejected the Matter of Root v Kapelman proposition that an absconding *609 defendant cannot claim prejudice, is erroneous. As noted above, Drake cites Matter of Root v Kapelman (supra) with approval. Thus while defendant may have been prejudiced by the lengthy delay, absent other factors, the delay is excusable as a matter of law if the defendant was the sole cause of such delay.
There is absolutely nothing in the court record or in the submissions of the parties to suggest that defendant’s absenting himself for 11 years was anything but voluntary. The defendant was familiar with court procedures, he was represented by counsel, and he was capable of working at "various jobs in the Bronx during this period and attended La Guardia Community College in Long Island City”. By his own admission, the defendant resided close by in The Bronx during his entire 11-year absence from New York County Criminal Court.
Did defendant’s voluntary act of absenting himself for 11 years frustrate the imposition of sentence or as the defense asserts, was the prosecutor obliged to locate the defendant and (implicitly) failing that, move to have him sentenced in absentia? Counsel is somewhat disingenuous when stating in his papers that "the prosecutor could have located defendant at some point during the past 11 years had any significant effort been made to do so” because "defendant has continuously resided in the Bronx since 1976, under the name Ronald Nasbit.” Even if there were such a burden to seek out the defendant to be sentenced on a B misdemeanor charge, the defendant is not forthcoming as to where in The Bronx he resided and the record indicates that such efforts might have proved futile. Defendant resided in at least two locations (both different from his 1976 address) within the three months prior to his most recent Bronx arrest. The defendant gave an additional Bronx address, 2789 Morris Avenue, when issued a summons on May 3, 1982.
It is well established that once there has been a determination that a defendant is voluntarily absent, the court is permitted to sentence a defendant in absentia, either after trial (Taylor v United States, 414 US 17; People v Parker, 57 NY2d 136; People v Sanchez, 65 NY2d 436) or after plea (Matter of Root v Kapelman, supra). Whether the court should be compelled to sentence in absentia to avoid losing jurisdiction is a more difficult question.
There are strong policy reasons militating against requiring *610 the court to sentence a defendant who has absconded after plea and before sentence, particularly where the matter is a relatively minor one. The general distinction drawn by Drake (supra, at 365) between speedy trial concepts and the requirement of timely sentencing apply even more so to a defendant who flees between plea and sentence. The concerns of witness availability and the defendant’s swift exoneration are no longer significant factors after conviction. While the classic public interest in orderly administration of justice and prompt disposition still apply to an absconding defendant, the specific considerations outlined in People ex rel. Harty v Fay (supra)— eligibility for parole, pardon or commutation of sentence, eventual return to society, and appellate review — do not have the same force.
To require courts to sentence in absentia would eliminate the incentive to remain at large; however, to compel such a procedure on relatively minor matters would generate massive amounts of senseless litigation. The trial court must be satisfied that the defendant’s absence is truly voluntary, not an easy matter of proof. The plight of the trial court in Matter of Root v Kapelman (supra) is inevitable; defense attorneys invariably and with good reason resist sentencing in absentia. They are understandably reluctant to represent an absent defendant who cannot participate in the sentencing procedure. While clearing case backlogs is an admirable goal of judicial administration, absentia sentencing proceedings are potentially vulnerable to attack upon the eventual return of the defendant, thus paving the way for further inevitable litigation.
Finally, the question arises as to whether there was some judicial or prosecutorial negligence or mistake that would override defendant’s absence and justify the loss of jurisdiction to sentence. The only action that could remotely be termed negligence or mistake is raised in the People’s papers. On May 3, 1982, the defendant was arrested in New York County for disorderly conduct, a nonprintable offense (CPL 160.10). He was issued a "universal” summons for which he subsequently failed to appear. The issuance of a summons, unlike a desk appearance ticket (CPL art 150) or an arrest (CPL art 140) does not require printing the defendant or bringing him into formal custody where the 1976 warrant would have been discovered. This salutary police department practice of not detaining citizens on petty offenses does not *611 amount to negligence or mistake, even if the acts of the police are imputed to the prosecutor or the judiciary.
In conclusion I find that the delay in sentencing here was excusable and the motion to dismiss is denied. It was the defendant’s own conduct of failing to return that frustrated the imposition of sentence and there is ample justification for not compelling the court to sentence an absent defendant under the facts of this case.